**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---x

**JASON GREEN,**

**Plaintiff,**

**-against-**

**SCOTT TURNER,** in his official capacity as Secretary of the United States Department of Housing and Urban Development;
and

**TODD BLANCHE,** in his official capacity as Acting Attorney General of the United States, Defendants.

**Defendants.**

---x

**1:26-cv-05425**

**COMPLAINT**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Jason Green ("Plaintiff" or "Mr. Green") brings this action on an individual basis against Scott Turner, in his official capacity as Secretary of the United States Department of Housing and Urban Development ("HUD"), and Todd Blanche, in his official capacity as Acting Attorney General of the United States ("DOJ"), and alleges violations of the Fair Credit Reporting Act, the Privacy Act, Declaratory Judgment Act and the Due Process Clauses of the Constitution of the United States.

## INTRODUCTION

1. This case arises from HUD's publication of a materially inaccurate CAIVRS report that was used by a mortgage lender to deny Plaintiff financing in connection with his attempt to purchase a home for himself and his family.

2. In or around June 2025, Plaintiff had been searching for a new home to purchase for himself and his family. He found such a house and applied for mortgage financing to purchase the home.

3. As part of the mortgage-underwriting process, Plaintiff's lender obtained a CAIVRS report from HUD and used that report to evaluate Plaintiff's eligibility for credit.

4. The CAIVRS report indicated that the borrower "shows as claim/default" and identified a DOJ entry belonging to the Plaintiff.

5. That report was inaccurate and materially misleading because Plaintiff did not have a present "claim/default" that rendered him ineligible for mortgage financing.

6. Instead, Plaintiff had a restitution obligation upon which he had previously been delinquent, but at the time of the mortgage application he was current on his obligation and has remained current and in compliance to this day.

7. The CAIVRS report did not disclose sufficient information for a reasonable lender to understand that Plaintiff was current and that any prior delinquency had been resolved.

8. To any reasonable user of the CAIVRS report, the report conveyed the materially false impression that Plaintiff was currently in default on a debt owed to the United States.

9. Upon information and belief, because the CAIVRS report labeled Plaintiff as a borrower who "shows as claim/default," Plaintiff's financing was denied and he lost the opportunity to complete the purchase of the home.

10. Although HUD publicly attempts to characterize CAIVRS as something other than a "consumer report," the reality of the system demonstrates otherwise.

11. CAIVRS exists for the very purpose of communicating consumer information about individual consumers to mortgage lenders and other users so those users can decide whether the consumer is eligible for federally related mortgage credit and other government-backed credit transactions.

12. In function and effect, CAIVRS is a consumer report under the FCRA, and HUD acts as a consumer reporting agency when it compiles and furnishes CAIVRS reports containing consumer information to lenders and other users for use in making credit decisions.

13. In 2024, the Supreme Court held in Department of Agriculture Rural Development Rural Housing Service v. Kirtz, 601 U.S. 42 (2024), that the United States is covered by the FCRA according to the statute's plain text.

14. HUD violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy in CAIVRS reports.

15. HUD also violated 15 U.S.C. § 1681i by failing to maintain any reasonable process for consumers to dispute and correct inaccurate CAIVRS information, failing to conduct a reasonable reinvestigation after notice of the inaccuracy, failing to forward the dispute to the furnisher in the manner required by the FCRA, and failing to delete the disputed item even though the information could not be verified through any meaningful process.

16. DOJ violated the Privacy Act, 5 U.S.C. § 552a(e)(5) and (g), by failing to maintain records about Plaintiff with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to Plaintiff in the mortgage-credit determination at issue.

17. In the alternative, HUD and DOJ violated Plaintiff's rights to procedural and substantive due process under the Fifth Amendment by maintaining and using false claim/default

information against him while providing no meaningful procedure by which he could obtain an investigation and correction of the inaccuracy.

## PARTIES

18. Plaintiff Jason Green is a natural person and a "consumer" within the meaning of the FCRA.
19. Defendant Scott Turner is the Secretary of HUD and is sued solely in his official capacity for the acts and omissions of HUD.
20. HUD is an executive agency of the United States.
21. HUD operates the Credit Alert Verification Reporting System, commonly known as "CAIVRS."
22. Upon information and belief, HUD compiles information concerning individual consumers' alleged debts owed to the United States, which it receives from participating federal agencies, including DOJ.
23. HUD makes that consumer information available through CAIVRS to authorized users, including mortgage lenders, for use in determining consumers' eligibility for government-backed and federally related mortgage credit.
24. The mortgage lenders and other authorized persons and entities that obtain CAIVRS information are "users" of those reports.
25. Upon information and belief, HUD uses facilities of interstate commerce to assemble, maintain, and furnish CAIVRS information to users throughout the United States.
26. Upon information and belief, HUD transmits CAIVRS reports to its users for monetary fees, access fees, system-use fees, or on a cooperative nonprofit basis, including through

interagency arrangements and lender-access arrangements associated with FHA lending and federally related mortgage lending.

27. In so doing, HUD is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f).

28. Defendant Todd Blanche is the Acting Attorney General of the United States and is sued in his official capacity for the conduct of DOJ.

29. DOJ is an executive agency of the United States.

30. DOJ maintains records about individuals who owe debts to the United States as a result of court-ordered restitution, including records concerning whether such debts are delinquent or in default.

31. DOJ furnishes such information to HUD for use in CAIVRS reports about individual consumers for the purpose of publication to third parties making credit decisions.

**JURISDICTION AND VENUE**

32. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1681p, and 5 U.S.C. § 552a(g), and the Administrative Procedures Act (APA) and the Constitution of the United States of America.

33. To the extent Counts IV and V seek declaratory and injunctive relief against federal officers in their official capacities, sovereign immunity is waived by 5 U.S.C. § 702.

34. Venue is proper in this District pursuant to 28 U.S.C. § 1391(e) because Defendants are officers of the United States sued in their official capacities and, upon information and belief, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and/or Plaintiff resides in this District.

35. To the extent necessary, Plaintiff pleads venue in the alternative and reserves the right to amend to plead additional venue facts more specifically.
36. Jurisdiction in this court is proper pursuant to 28 U.S.C. 1346 where the United States is a Defendant.
37. The conduct alleged herein occurred within two (2) years prior to the filing of this action, thus this action is timely commenced. 28 U.S.C. § 2401.
38. The Court is authorized to grant declaratory judgment and injunctive relief pursuant to the Declaratory Judgment Act 28 U.S.C. §§ 2201 – 2202 and the APA 5 U.S.C. § 706.
39. The jurisdictional exhaustion requirement is waived because requiring the Plaintiff to proceed through the administrative process would be futile because the issue does not involve an error in benefits and would not address the procedural decisions or lack thereof made by the DOJ and HUD.
40. Furthermore, HUD and DOJ deprived Mr. Green of his FCRA and Privacy rights without any due process at all: they made unappealable and impenetrable decisions to report inaccurate and misleading information without any notice, hearing, or restorative procedure.
41. Otherwise, requiring the Plaintiff to exhaust administrative remedies will cause irreparable harm as his reliance on his benefits is a matter of survival.
42. Congress enacted the FCRA to ensure fair and accurate consumer reporting, to protect consumer privacy, and to require consumer reporting agencies to exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy.

STATUTORY BACKGROUND

43. The FCRA defines a "consumer reporting agency" as any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for that purpose. 15 U.S.C. § 1681a(f).

44. The FCRA defines a "consumer report" broadly as any communication of information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for credit or insurance to be used primarily for personal, family, or household purposes, employment purposes, or another purpose authorized under 15 U.S.C. § 1681b. 15 U.S.C. § 1681a(d).

45. Among other duties, whenever a consumer reporting agency prepares a consumer report, it must follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b).

46. When a consumer disputes the completeness or accuracy of any item of information contained in the consumer's file, the consumer reporting agency must conduct a reasonable reinvestigation, record the current status of the disputed information or delete the item, provide notification of the dispute to the furnisher, and delete information that cannot be verified. 15 U.S.C. § 1681i(a).

47. The Privacy Act requires agencies to maintain all records used by the agency in making any determination about an individual with such accuracy, relevance, timeliness, and

completeness as is reasonably necessary to assure fairness to the individual in the determination. 5 U.S.C. § 552a(e)(5).

48. The Privacy Act authorizes suit when an agency fails to comply with that duty in a manner that is intentional or willful and an adverse determination results. 5 U.S.C. § 552a(g).

**HUD, CAIVRS, AND DOJ**

49. CAIVRS is a United States governmental credit-screening system known as the Credit Alert Verification Reporting System.

50. HUD publicly describes CAIVRS as a system through which participating federal agencies and authorized users can determine whether an individual borrower has a delinquent federal debt, claim, or default that may affect eligibility for federally related credit.

51. Upon information and belief, through CAIVRS, HUD aggregates information supplied by multiple federal agencies and makes the resulting information available to authorized lenders and other users evaluating consumer credit applications.

52. Upon information and belief, HUD makes CAIVRS available to mortgage lenders in connection with FHA-insured mortgage lending and other federally related mortgage lending transactions.

53. Upon information and belief, lenders access CAIVRS in the ordinary course of underwriting mortgage applications to determine whether an applicant is eligible for financing.

54. CAIVRS assembles and evaluates information on consumers, including alleged claims, defaults, delinquent obligations, and related federal debt status, for the purpose of furnishing that information to third-party users.

55. The information furnished through CAIVRS bears directly on a consumer's credit worthiness, credit standing, and credit capacity because it is used to determine whether the consumer qualifies for mortgage financing.

56. HUD expects and intends the information transmitted to users in CAIVRS reports to be used in deciding whether an individual consumer is eligible for credit in connection with a home loan.

57. That is exactly what happened here: Plaintiff's lender obtained a CAIVRS report and used it in connection with its mortgage decision.

58. Although HUD may contend on its website or elsewhere that CAIVRS is not a "consumer report," that label does not control the application of the FCRA.

59. The FCRA turns on statutory definitions and the real-world function of the communication, not on the Government's self-serving disclaimer.

60. In actual practice, a CAIVRS communication is a report about a specific consumer, bearing on the consumer's credit standing and credit worthiness, furnished to a lender, and used as a factor in deciding whether the consumer will receive mortgage credit.

61. CAIVRS therefore is a "consumer report" within the meaning of 15 U.S.C. § 1681a(d), and HUD is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f).

62. DOJ is one of the federal agencies that furnishes consumer information to HUD for inclusion in CAIVRS.

## FACTUAL ALLEGATIONS

57. In or around June 2025, Plaintiff applied for mortgage financing to purchase a home for himself and his family, including his spouse and four children.

58. The mortgage application was being handled through Contour Mortgage Corporation.
59. The home Plaintiff intended to purchase was located in Babylon, New York.
60. The home Plaintiff intended to purchase was suitable for his family size, reasonably convenient to work and school, listed at a price he could afford by qualifying for a mortgage, and subject to approval by his probation officer.
61. Plaintiff had worked hard to locate a home for his family that was affordable and that met the needs of his household.
62. Plaintiff and his family were relieved and excited to be able to move into a home of their own that met their needs and that they were otherwise qualified to buy.
63. In connection with the mortgage-underwriting process, the lender obtained a CAIVRS report from HUD.
64. A CAIVRS-related FHA Connection document dated June 17, 2025 shows that the case number was successfully assigned, warns that the "BORROWER FOUND AS CLAIM/DEFAULT ON CAIVRS FILE," and further indicates the matter was pending borrower validation.
65. The same document identifies Plaintiff Jason R. Green as a borrower and shows CAIVRS Claim/Default Data tied to DOJ, with case number 053-166889 and case type listed as "CLAIM."
66. The lender used the CAIVRS report in evaluating Plaintiff's mortgage application.
67. The CAIVRS report caused Plaintiff's financing to be denied or otherwise rendered unavailable on the necessary timeline for the purchase transaction.
68. As a result, Plaintiff lost the opportunity to complete the home purchase.

69. Plaintiff has since lost other opportunities to purchase a home because HUD and DOJ have continued to refuse to correct the CAIVRS information.

70. The CAIVRS report was inaccurate and materially misleading.

71. Plaintiff did not have a "claim/default" that should have caused him to be reported in CAIVRS as ineligible for the requested mortgage financing.

72. Plaintiff had a restitution obligation, which is not itself a current claim/default.

73. Although Plaintiff had previously been delinquent at some point in the past, by the time of the mortgage application he was current on his restitution-related payment obligation and remained current.

74. Reporting Plaintiff as a borrower who "shows as claim/default" was therefore false or, at minimum, materially misleading in the context of a mortgage underwriting decision.

75. After learning that CAIVRS was causing his mortgage financing to fail, Plaintiff attempted to get the CAIVRS information corrected.

76. Plaintiff, his representatives, and his lender communicated with government personnel, including at DOJ and HUD, in an effort to determine how the CAIVRS entry could be corrected or removed.

77. On July 8, 2025, the lender sent written correspondence directly to DOJ on Plaintiff's behalf and at Plaintiff's direction asking whether someone could "go into the system and mark him as paying not delinquent."

78. DOJ and HUD indicated that they were trying to determine whether there was a way to correct or remove the CAIVRS entry.

79. On July 17, 2025, Plaintiff wrote a follow-up communication to DOJ and HUD explaining that the sellers were anxious and wanted to cancel the contract if he could not show progress on the mortgage application.

80. On July 21, 2025, DOJ advised that “Main Justice policy is that you can’t be removed once you have been placed on TOP.”

81. Plaintiff was thus informed, in substance, that there was no available mechanism for timely removing or correcting the CAIVRS entry through ordinary direct dispute channels.

82. Plaintiff exhausted such agency-level remedies as were available by directly disputing the inaccurate information with HUD and DOJ and requesting that the agencies investigate, correct, and/or remove the inaccurate reporting.

83. Both agencies effectively informed Plaintiff that they had no procedure, or no meaningful procedure, for investigating and resolving a factual dispute of this kind.

84. Any requirement that Plaintiff continue to submit additional disputes to HUD or DOJ would therefore have been futile because both agencies had already made clear that they lacked or would not provide any mechanism capable of investigating and correcting the inaccurate information.

85. Plaintiff contacted HUD to get the CAIVRS report corrected, but was informed that HUD had no process for disputing or correcting the report.

86. Plaintiff contacted DOJ, but was informed there was no mechanism for disputing an inaccurate restitution-related report to CAIVRS that would provide timely relief.

87. Despite having actual notice that the CAIVRS entry was disputed and was inaccurate or materially misleading, HUD did not conduct any reinvestigation.

88. HUD did not provide Plaintiff with a meaningful process by which to dispute the CAIVRS entry.

89. Upon information and belief, HUD did not forward Plaintiff's dispute to DOJ in the manner required by the FCRA, or otherwise ensure that any reasonable reinvestigation occurred.

90. Even though HUD could not verify the accuracy of the information it was reporting about Plaintiff in CAIVRS, HUD failed to correct or delete the disputed information.

91. DOJ likewise had direct notice from Plaintiff and his representatives that the information being supplied for use in CAIVRS was inaccurate or materially misleading because Plaintiff was current on the restitution-related obligation at the time of the mortgage application.

92. Despite that notice, DOJ did not reasonably investigate whether its records accurately reflected Plaintiff's then-current status, did not timely correct the inaccurate or materially misleading information, and continued to permit the inaccurate information to be used in connection with Plaintiff's mortgage application.

93. Upon information and belief, DOJ maintained and disseminated outdated delinquency/default information about Plaintiff even though such information was not accurate, timely, complete, or fair in the context of a current mortgage-credit determination.

94. Upon information and belief, DOJ's inaccurate or materially misleading records were a substantial factor in HUD's continued reporting of Plaintiff as a borrower who "shows as claim/default."

95. The absence of any meaningful process at either HUD or DOJ by which Plaintiff could obtain an investigation and correction of the inaccurate information deprived Plaintiff of any

realistic avenue to protect himself from the ongoing use of false and stigmatizing government debt information in mortgage underwriting.

96. Both HUD and DOJ are aware of the Supreme Court's holding in Department of Agriculture Rural Development Rural Housing Service v. Kirtz, 601 U.S. 42 (2024), that the FCRA applies to federal governmental entities according to the statute's plain text.

97. That decision put federal agencies, including HUD and DOJ, on notice that they are required to comply with the FCRA because Congress expressly extended the statute to government.

98. Despite this knowledge, upon information and belief, HUD has failed to adopt policies and procedures designed to comply with the FCRA in connection with CAIVRS.

99. HUD continues to maintain that CAIVRS is not a consumer report and has failed to adopt any reasonable procedures designed to assure maximum possible accuracy or to comply with its reinvestigation duties under 15 U.S.C. § 1681i.

100. DOJ is independently aware of its obligation under the Privacy Act to ensure the records it maintains and disseminates are accurate, relevant, timely, and complete.

101. Upon information and belief, HUD has not conducted any meaningful review or audit of information it receives from DOJ to ensure its accuracy before reporting such consumer information to third parties.

102. Upon information and belief, HUD has not investigated DOJ's system for gathering, maintaining, updating, correcting, and ensuring the accuracy of information it supplies to HUD.

103. Even if Plaintiff had been delinquent in the past, it was inaccurate or materially misleading for HUD and DOJ to cause him to be reported as presently in claim/default status when he was, in fact, current.

104. DOJ could have updated its records about Plaintiff and reported the correction to HUD, but chose not to do so despite direct notice from Plaintiff and despite its obligations under the Privacy Act.

105. As a direct and proximate result of HUD's and DOJ's conduct, Plaintiff suffered injuries including denial of mortgage financing, loss of the home-purchase opportunity, out-of-pocket expenses and transaction-related costs, loss of time and labor not only to apply for a mortgage but also to try to correct the inaccurate reporting with both DOJ and HUD, reputational harm from being reported to his mortgage company as defaulted on a government debt, emotional distress, tension within his family, physical sickness, frustration, anxiety, humiliation, and loss of sleep.

106. Plaintiff also suffered pecuniary harm, including the loss of the economic value of the home-purchase transaction, increased housing-related costs, transaction expenses, and other financial losses proximately caused by the denial of mortgage financing.

107. The inaccurate report that Plaintiff "shows as claim/default" imposed a stigma of present financial irresponsibility or delinquency in connection with a federal debt and directly altered Plaintiff's legal and practical ability to obtain mortgage financing through federally related lending channels.

108. The denial of any meaningful corrective process after Plaintiff gave both agencies notice of the inaccuracy deprived him of constitutionally adequate procedures to protect his property and liberty interests.

109. The agencies' maintenance and use of inaccurate default-related information despite direct notice from Plaintiff was arbitrary, conscience-shocking, and without reasonable governmental justification.

110. To this day, upon information and belief, Plaintiff has not been approved for a mortgage because of the inaccurate information being maintained and used through CAIVRS.

## COUNT I

## VIOLATION OF 15 U.S.C. § 1681e(b)
## HUD: FAILURE TO FOLLOW REASONABLE PROCEDURES TO ASSURE MAXIMUM POSSIBLE ACCURACY

111. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

112. HUD is a consumer reporting agency within the meaning of the FCRA.

113. The CAIVRS communication furnished about Plaintiff was a consumer report within the meaning of the FCRA.

114. HUD prepared and furnished the CAIVRS report concerning Plaintiff to a mortgage lender for use in determining Plaintiff's eligibility for a mortgage.

115. HUD failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff in that report.

116. Specifically, and without limitation, HUD's procedures were unreasonable because HUD prepared and furnished consumer reports for mortgage underwriting purposes while:

a. lacking any meaningful process for consumers to dispute inaccurate CAIVRS information;
b. lacking any reasonable process to investigate whether a DOJ-supplied claim/default entry remained accurate at the time of the mortgage decision;
c. failing to check whether the information was materially misleading in light of Plaintiff's current payment status;
d. continuing to report the item after actual notice that the entry was disputed;
e. relying blindly on third-party government data without any procedure reasonably designed to test whether the disputed information was actually true; and
f. maintaining a system for mortgage-credit decisions while disclaiming responsibility for accuracy and correction.

117. HUD's inaccurate and misleading CAIVRS report was a proximate cause of Plaintiff's inability to obtain the requested mortgage financing and the resulting loss of the home purchase.

118. HUD knew or should have known it had an obligation to comply with the FCRA, including by establishing and following procedures reasonably adapted to ensure the accuracy of the information it reported about consumers in CAIVRS.

119. As a direct and proximate result of HUD's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered the injuries and damages described above.

120. HUD's conduct was willful and/or negligent.

**COUNT II**
**VIOLATION OF 15 U.S.C. § 1681i**
**HUD: FAILURE TO CONDUCT A REASONABLE REINVESTIGATION, FORWARD THE DISPUTE, AND DELETE INFORMATION THAT COULD NOT BE VERIFIED**

121. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

122. Plaintiff disputed the accuracy and completeness of the CAIVRS information concerning him directly to HUD.

123. HUD had notice that the CAIVRS entry was inaccurate and/or materially misleading because Plaintiff was current on the restitution-related obligation and should not have been reported as a borrower who "shows as claim/default."

124. HUD failed to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate.

125. HUD failed to provide proper notice of the dispute to DOJ and/or failed to ensure that DOJ conducted any meaningful review sufficient to satisfy the FCRA.

126. HUD failed to record the current status of the disputed information in a manner that protected Plaintiff from continued inaccurate reporting.

127. HUD failed to delete the item even though it could not be verified through any reasonable dispute-resolution process.

128. HUD's failure to reinvestigate or delete the disputed information was a proximate cause of Plaintiff's inability to obtain the requested mortgage financing and the resulting loss of the home purchase.

129. HUD knew or should have known it had an obligation to comply with the FCRA, including by establishing and following procedures reasonably adapted to reinvestigate disputed information, communicate a dispute to the furnisher, and delete information that could not be verified.

130. As a direct and proximate result of HUD's violation of 15 U.S.C. § 1681i, Plaintiff suffered the injuries and damages described above.

131. HUD's conduct was willful and/or negligent.

**COUNT III**
**VIOLATION OF THE PRIVACY ACT, 5 U.S.C. § 552a(g)**
**DOJ: FAILURE TO MAINTAIN ACCURATE, TIMELY, RELEVANT, AND COMPLETE RECORDS NECESSARY TO ASSURE FAIRNESS IN A DETERMINATION**

132. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

133. DOJ is an agency within the meaning of the Privacy Act.

134. DOJ maintained records about Plaintiff concerning his restitution-related obligation, including records reflecting whether that obligation was delinquent, in default, or otherwise reportable for use in CAIVRS.

135. Those records were used, directly or indirectly, in making a determination about Plaintiff, namely a mortgage-credit determination affecting his eligibility to obtain financing to purchase a home.

136. The Privacy Act required DOJ to maintain records used in making such determinations with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to Plaintiff in the determination. 5 U.S.C. § 552a(e)(5).

137. DOJ violated the Privacy Act by maintaining and disseminating inaccurate, untimely, incomplete, and/or materially misleading records about Plaintiff's alleged federal debt status, including by causing Plaintiff to be represented in CAIVRS as a borrower who "shows as claim/default" when Plaintiff was current on the restitution-related obligation at the time relevant to the mortgage decision.

138. DOJ further violated the Privacy Act by failing, after direct notice from Plaintiff and his representatives, to investigate and correct the inaccurate or materially misleading records used in connection with the adverse mortgage determination.

139. DOJ's failure to maintain accurate, timely, relevant, and complete records was intentional or willful.

140. DOJ's violation proximately caused an adverse determination against Plaintiff, including denial of mortgage financing and loss of the home-purchase opportunity.

141. As a direct and proximate result of DOJ's violation of the Privacy Act, Plaintiff suffered actual damages, including pecuniary loss, out-of-pocket expenses, transaction-related losses, lost time and labor, and other financial harm.

142. To the extent amendment-type exhaustion is required, Plaintiff exhausted the remedies available to him by directly disputing the inaccurate information with DOJ and requesting correction, and any further pursuit of administrative remedies would have been futile because DOJ informed Plaintiff in substance that it had no procedure capable of investigating and correcting the factual dispute presented here.

**COUNT IV**
**(In the alternative)**
**VIOLATION OF THE FIFTH AMENDMENT**
**PROCEDURAL DUE PROCESS**
**AGAINST HUD AND DOJ**

143. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

144. Plaintiff had protected property and liberty interests, including his interest in fair consideration for mortgage credit free from false government debt status reporting, his interest in the home-purchase transaction, and his interest in not being stigmatized by inaccurate government reporting that effectively branded him as currently in claim/default status.

145. HUD and DOJ, acting under color of federal law, deprived Plaintiff of those interests by causing and maintaining inaccurate default-related information in CAIVRS and by allowing that information to be used to deny Plaintiff mortgage financing.

146. After receiving direct notice from Plaintiff that the information was inaccurate and materially misleading, neither HUD nor DOJ provided Plaintiff with constitutionally adequate pre-deprivation or post-deprivation procedures to challenge, investigate, and correct the false information.

147. Instead, each agency effectively advised Plaintiff that it lacked any meaningful procedure for investigating and resolving the factual dispute.

148. The absence of any meaningful corrective procedure was itself a denial of due process.

149. Requiring Plaintiff to pursue further administrative efforts would have been futile because both agencies had already made clear that no adequate process existed.

150. Plaintiff has no adequate remedy at law for the ongoing constitutional deprivation to the extent HUD and DOJ continue to maintain and use inaccurate information without any constitutionally sufficient mechanism for correction.

151. Plaintiff is therefore entitled to declaratory and injunctive relief against HUD and DOJ to remedy the denial of procedural due process.

**COUNT V**
**VIOLATION OF THE FIFTH AMENDMENT (In the alternative)**
**SUBSTANTIVE DUE PROCESS**
**AGAINST HUD AND DOJ**

152. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

153. The conduct of HUD and DOJ in maintaining, communicating, and using inaccurate claim/default information about Plaintiff for the purpose of consumer mortgage underwriting, while simultaneously affording Plaintiff no meaningful process by which to challenge and correct that false information, was arbitrary, irrational, and fundamentally unfair.

154. HUD’s and DOJ’s conduct bears no reasonable relationship to any legitimate governmental objective when, after direct notice that Plaintiff was current on the obligation at issue, the agencies nevertheless persisted in treating him as though he remained in claim/default status and denied him any realistic path to correction.

155. The agencies' conduct shocks the conscience because they knowingly or recklessly subjected Plaintiff and his family to the loss of housing opportunity, severe financial consequences, and continuing stigma based on information they had notice was false or materially misleading.

156. Plaintiff has no adequate remedy at law for the ongoing constitutional deprivation to the extent HUD and DOJ continue to maintain and use inaccurate information without any meaningful corrective mechanism.

157. Plaintiff is therefore entitled to declaratory and injunctive relief against HUD and DOJ to remedy the violation of substantive due process.

**Count VI**
**Procedural Violation of the APA**
**Against HUD and DOJ**

158. The court must find that the conduct of both HUD and DOJ toward Mr. Green was taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

159. HUD and DOJ are federal agencies. 5 U.S.C. § 551(1).

160. The APA requires agencies follow rulemaking procedures before taking action that impacts substantive rights. 5 U.S.C. § 553.

161. By following any procedure allowing it to deprive Mr. Green, or any person, of benefits in which he has a protected property interest without having a process to correct inaccurate reporting of the status of a federal debt with the knowledge that it would negatively impact or deprive the Plaintiff of credit needed to buy a home and for which he was otherwise qualified for, Defendants actions deprived Mr. Green of his substantive rights without following a rule-making process.

162. This conduct by Defendants violated the APA and inflicted injuries described at length throughout this Complaint upon Mr. Green, and continues to inflict injuries upon him.

**Count VII**
**Declaratory Judgment and Equitable Relief**
**Against HUD and DOJ**

163. The dispute and controversy herein is a justiciable matter, which is not speculative and resolution by this court will determine the rights and interests of the parties pursuant.

164. HUD and DOJ deprived Mr. Green of his rights to have a maximally accurate, complete, relevant, and timely corrected record of the status of the restitution debt. However, because of the lack of a reasonable procedure for assuring accuracy or any procedure to dispute and correct an inaccurate record, HUD and DOJ continue to so deprive him, without regard to his procedural or substantive rights to an accurate record.

165. Despite being apprised that Mr. Green's restitution obligation is current and up-to-date, HUD and DOJ continue to deprive him of his rights.

166. All parties that have an interest in this matter have been joined.

167. Pursuant to 28 U.S.C. § 2201, there is a justiciable controversy for which declaratory judgment is an appropriate mechanism for resolving the rights of the parties.

168. Mr. Green has no other adequate remedy at law requiring the correction of his CAIVRS report.

169. Each passing moment causes Mr. Green irreparable harm and mounting damages, which continue to escalate unless the court enjoin HUD and DOJ from reporting the inaccurate information that is contained in the CAIVRS report.

170. Accordingly, Plaintiff seeks an injunction against HUD's erroneous CAIVRS reporting and DOJ's furnishing of the inaccurate status of Mr. Green's restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants and award:

A. Actual damages pursuant to 15 U.S.C. §§ 1681n and 1681o;

B. Statutory damages pursuant to 15 U.S.C. § 1681n;

C. Punitive damages as allowed by law under the FCRA 15 U.S.C. § 1681n;

D. Actual damages pursuant to 5 U.S.C. § 552a(g)(4), including the statutory minimum recovery available thereunder;

E. Costs of suit together with reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1681n and 1681o and 5 U.S.C. § 552a(g)(4);

F. Declaratory relief that HUD violated the FCRA, that DOJ violated the Privacy Act, and that HUD and DOJ violated Plaintiff's rights to procedural and substantive due process;

G. Injunctive relief and declaratory judgment requiring correction, amendment, deletion, or other appropriate remedial action sufficient to ensure that inaccurate claim/default information concerning Plaintiff is no longer maintained or used in CAIVRS or related agency records in a manner that deprives Plaintiff of fair access to mortgage credit;

H. Pre-judgment and post-judgment interest as allowed by law; and

I. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Dated: June 26, 2026

Respectfully submitted,

______________________________

Kevin C. Mallon
Mallon Consumer Law Group, PLLC
550 Kinderkamack Road, Suite 117
Oradell, NJ 07649
(917) 734-6815
kmallon@consmerprotectionfirm.com
*Attorneys for Plaintiff*